The court will proceed to the fifth case, Yafai v. Pompeo. Ms. Shepard Thank you, Your Honors, Counsel. May it please the Court, my name is Shannon Shepard. I'm here today representing the plaintiff appellants, the U.S. citizen Moshin Yafai v. Pompeo, and his wife, Zahora Ahmed, whose visa was refused by the U.S. Embassy after two of her children tragically died in a drowning accident. The Embassy cited attempted alien smuggling as the ground of inadmissibility, claiming that the children who died, or insinuating that the children who died, were not really hers. Now, before going into the details of the case, we do recognize that consular officers have vast discretionary authority, perhaps even more than some think they should, to deny visas for a variety of reasons. That's well settled. But courts have also left open the door for exceptions to this broad authority, to the to visa refusals, the judiciary should be able to check this broad executive power. The case law establishes that this so-called doctrine of consular non-reviewability does not apply where there is no facially legitimate and bona fide reason to refuse visa issuance. Courts have held that this facially legitimate and bona fide reason must be supported by discrete factual predicates to support the inadmissibility ground cited. In this case, there were two refusals. The first refusal notice simply stated the names of the two deceased children. No other evidence was cited to support the conclusion of alien smuggling. Counsel, could she have sought a waiver if the children were hers in the smuggling? Isn't there a statutory provision that would have allowed her to do that? Did she ask for that? Yes, Your Honor, there is a waiver if you are trying to smuggle your own children. But in this case, the embassy seems to be alleging that they were not, in fact, her children, because prior to making this determination, they had requested DNA tests of all seven of Mr. Yafai's and Ms. Ahmed's children. And these two children, tragically, were deceased before the DNA test could be carried out. So at one point, Ms. Ahmed had sought if a waiver was possible and then was told that no, because they were not her children. So the standard of proof wouldn't have been different under the statute, under the I'm not sure I understand the question, Your Honor. I'm not sure I understand how the waiver works. Okay. I guess I'm wondering why, if the children, if she had the DNA testing, if the children were hers, that she didn't try to seek the waiver. And I guess what you're saying is she would have been told no for the same reasons that she was denied the visa in the first place. No, Your Honor. The issue here was that the children did not undergo DNA testing before they died. That's right. So she did not have that evidence to support that. There was other evidence submitted in the form of birth certificates, prenatal records, school records for the older child who was deceased, the death certificates themselves, newspaper clippings from the accidents, and family photos. And the government basically ignored all of this exculpatory evidence, exculpatory to the alien smuggling charge, and then provided a second refusal notice, which simply cited the statute, 212A6E, with no further explanation of why. At some point there was a communication between the embassy and counsel for the family in which the embassy indicated there had been some contradictions in testimony. Are we allowed to consider that as part of the government's explanation? Well, but the government never explained what those contradictions were. No, it didn't. No. And that was when... We've certainly all seen good and we've all seen very superficial contradictions in testimony in these immigration cases that government officials have relied on. That's a problem. Yes, Your Honor. And in this case, the applicant was never given the opportunity to address or rebut these alleged contradictions, and the government didn't even state whether those contradictions were related to the issue of the ultimate decision, which was based on alien smuggling. For example, if they had a discrete and factual basis or discretion in the testimony, that would then lead them to believe that there was something amiss here, that the children were not really theirs. That would be sufficient to support their conclusion. But the government provided no evidence. They didn't suggest that the children didn't really exist, that they didn't really die, that they weren't really the applicants. So there was really just this invented theory that had no support in the facts. So basically your point is that this significant amount of evidence, including official documents from the host country, is in its ignored by the government, is in itself evidence of a lack of bona fides on the part of the government. Is that right? Yes, Your Honor. In fact, the government in its brief questioned why we had cited this court's decision in Shaparo al-Kantara, which was a criminal case, but there's very little case law that discusses what an act of bad faith might be on the part of the government. And in that case, this court had noted that ignoring exculpatory evidence would constitute bad faith. That didn't happen in that case. The court found that the ICE agents were not acting in bad faith. But that's as an example of what could be considered bad faith. And in this case, our position is that that was the act of bad faith that makes this decision not facially legitimate and bona fide. You certainly have to deal with some very strong language against your point in both Kerry and Mandel, don't you? Yes, Your Honor, but I believe our cases are distinguishable. Do you want to tell me a little about why? Sure. For the Kerry v. Dinh case, the government did offer an explanation. They thought that the applicant had ties to terrorism. Now, we may disagree as to whether they provided sufficient proof of those ties and as to what they should be required to do. But here they gave you the explanation. That was a statutory provision they cited in effect, ties to terrorism. But here they cited another statutory provision that your clients, or whether she's actually your client. I guess you more represent the husband, don't you? Both parties, but yes. But the fact of the matter is they cited the statutory provision for smuggling aliens into the United States. Yes, but courts have held that just citing the statutory provision has to be supported by discrete factual predicates. And in this case, there were none. I looked at that language. Does it really say that? Does it really say you have to show? Is that just in effect? It's a fairly weak thread, I thought, the way that was constructed. I think the issue, Your Honor, is that in those prior cases, the government did have an explanation. In this court's decision in Hazama, for example, there was a page and a half decision about the alleged terrorist act of the applicant. In Morphin, there was an indictment for cocaine smuggling, which the court said, okay, that would be a sufficient predicate. But in this case, the consular officer just claimed alien smuggling without any support, any reason, any basis, and in fact ignoring evidence to the contrary. And that's where I think the distinguishing factor is. So from your perspective, at least, if we were to accept the government's point of view here, the point would be all the government has to do is keep its mouth shut. Correct. And it can be as arbitrary as it wants. The government could have claimed Ms. Ahmed was a drug dealer, but there's no evidence of that. There's no indictment behind it. There's no ties for her. Well, here they do have the fact that two children, they applied to get two children into the country, and then all of a sudden withdrew it. Well, they withdrew that application because the children were deceased. I understand, but there's some basis for the fact that they tendered the two applications and removed them. Well, I think if I may, I see I'm almost out of time, but one huge piece of exculpatory evidence was that one of the deceased children was actually a twin, and their sibling was able to submit DNA, which was found to be sufficient. So the government ignoring such concrete evidence, it's an act of bad faith that should be judicially repealable. Thank you, Ms. Shepard. Mr. Goldsmith. Your Honor, may I please report? Henry Goldsmith on behalf of the government. To begin, I'd like to address one of your concerns and just state very briefly what were the facts in Kerry v. Dinn. In Kerry v. Dinn, the government supplied, quote, no explanation other than citing the statute, and that appears in the concurring opinion of Justice Kennedy, but also in the plurality opinion in page 2132. So in that case, it was simply a citation to the statutory provision and the Ninth Circuit initially found that that was inadequate, that the government had to supply more information, and the Supreme Court reversed. The basis for that reverse, again, there were two different opinions, the plurality and the concurring opinion. What did Justice Kennedy have to say about that? That what Justice Kennedy had to say was that that citation to that subsection was sufficient, that courts do not look behind, although he did not foreclose the possibility that if there had been an affirmative showing, with particularity of facts showing bad faith, that that court might be able to look behind. Why don't we have that here? I mean, we have, there's a tremendous amount of evidence of parentage, including scientific evidence, including documentation from the host government. I mean, there's a lot there. Well, we would respectfully disagree. We think that, yes, there's evidence that they've provided, but the consular officer found that that evidence was not persuasive and made a finding. He cited a bona fide and legitimate reason. He provided particular statutory provision 1182A6E. This Court has observed that. Do we know that he found the evidence not persuasive? Because he specifically, if you look at the decision, the first decision which is found in the record, in Docket Entry 16-1, Exhibit G, said, you attempted to smuggle two children into the United States using the identities of Jacob Mosef Yafi and Khalid Mosef Yafi. And then, subsequently, Exhibit H, again, cited that same provision. So that was September 2015, about two years later. As was noted, there was also some e-mail correspondence that appears in the record at 16-1, Exhibit K, stating that about a lack of credibility. So there was some type of determination. Now, you can question it. But your sister indicates that we don't have no idea whether that lack of credibility, that conflicting testimony, lack of credibility, whatever it was, had anything to do with the smuggling.  In Kerry v. Dinn, there was just a citation to a statutory provision. There's no requirement for the government to go beyond that. Well, then, what does this bona fide exception mean? A lack of bona fides or bad faith, however you want to put it. What does it mean? How can it ever be fulfilled? The government must have some idea of what it involves. Right. I think there's two parts to that. There's legitimate and bona fide reason, which is a valid basis. And that language comes from Mandel saying, you don't go behind the rules. It was cited in the statute. Right. So that's part. And then there's Kennedy's concurring opinion, where he did not foreclose the possibility that there could be a showing of bad, an affirmative showing of bad faith. But he didn't identify what that would be. I'm asking you, as the agency charged with the administration of the statute, to give me some idea of what that could be. Or is that simply language that was put in the opinion to make us all feel good? I would say that Justice Kennedy did not rule out that possibility. But there has been no court that has found that any plaintiff has met that burden. And it's difficult to see how someone could show that a consular officer acted in bad faith. And we would just say that this court has observed that for more than 100 years, that courts have treated denials by consular officials as discretionary. There is no review to determine whether or not there is substantial evidence. Mandel tells us not to look behind. The reason for it is not to inquire into the supporting evidence. And that is precisely what counsel is asking this court to do. Counsel, can I ask you a question? You may not know the answer. I'm confused about what they thought she was lying about. Did they think she was trying to take in two other children who were not her own, using her kids' identities? Or did she think that the kids she claimed to be bringing in were not her own? Your Honor, the answer to that question is not on the record. But I'd like to address it if I may. In general terms, there are situations where people are trying to bring perhaps other family members and present to the consular officer that these other individuals are children, when they are in fact nieces or nephews. And that's why sometimes the counsel asks for DNA testing to determine that the purported children are in fact the children. And in some cases, subsequent to the request being made for DNA testing, it is withdrawn for individuals. That is, the claim is that something happened to the two other children. Again, that's not something that's in the record, but I'm trying to address your concern. Give us context. And I would just say here that the plaintiffs have failed to allege any facts. It's not just that there aren't enough facts or they're not alleged with sufficient particularity. There are no facts being alleged that would show that the consular officer acted in bad faith. The request is that this Court infer bad faith based on the evidence provided. And that is not what an affirmative showing of alleging with sufficient particularity facts showing bad faith. And there's some analysis from a Ninth Circuit case, Cardenas, on this. I recognize that this Court has never directly addressed what is bad faith in this context. But what we are left with is what is in the record. There has been a citation to a valid basis. The Mandel instructs you don't look behind that basis. The district court correctly interpreted and applied the precedent, Kerry v. Dinn, Mandel, and found that there is no review under the doctrine of consularity. The United States is a signatory to the United Nations Convention on the Protection of Children. Is it not? I believe that's correct. And that convention does protect the right of children to live with their parents, doesn't it? Generally, yes. I'm not familiar with that particular provision. Would that have a role to play in how we ought to look at this consular privilege of yours? I don't think so. Maybe with respect to the standard of scrutiny. I don't think so because just if you look at Kerry v. Dinn, there is certainly an interest in spouses living together, but that didn't mean – But nobody argued the United Nations Convention in those Supreme Court cases as far as you know. Right, but there's no – there's a basic function of sovereignty is the right to exclude individuals. The government is not saying that they can't live together. The government is saying that this individual is barred from entering the country under a valid statute. The convention certainly is saying they shouldn't be subject to arbitrary government action. That prevents them from doing that, though, I guess, doesn't it? Well, in this case – but there is a limit on the scope of judicial review to the extent there is any review. The review is satisfied by the way – I'm sitting here trying to figure out how this court could write an opinion without being disrespectful to Justice Kennedy's language of saying there is a possibility of a showing of bad faith. It sounds like the United States is asking us to write that language out of the U.S. reports. That's my problem. Can you help me? Yes, Your Honor. I would say this. This court does not have to address whether or not there would ever be a situation where there might be a showing of bad faith. Justice Kennedy didn't say that there is this exception. He just didn't foreclose that possibility, and we don't have to address it because the district court got it right. The district court said there's been no affirmative showing in this case, and you don't have to address whether or not there could be another case. So we'll have that hypothetical exception that becomes more ethereal as we write. All right? Your Honor, I see my time has expired. Can I just respond briefly? Sure, of course. Thank you. Let me just say I understand your concerns, and it is something that courts have wrestled with. How would a plaintiff, as a practical matter, be able to show bad faith? But what we are left with is the court precedent, and the district court correctly applied Kerry v. Ginn and correctly applied Mandel and found that in this particular case, putting aside what might happen in a future case, in this particular case, there was no affirmative showing of facts as opposed to legal conclusion of facts alleged with sufficient particularity showing bad faith. For that reason, the district court's decision should be affirmed. Thank you, Your Honor. Thank you. Yes. Thank you, Mr. Goldsmith. Ms. Shepherd, I think your time has expired, but you may have two minutes for rebuttal. Thank you. I would just like to briefly address again the distinction between this case and Kerry v. Ginn. While in that case there was no specific factual basis of the terrorist concerns given, the court found that under these, this was a national security issue. Alleged terrorism is obviously a much more serious and dangerous proposition, whereas in this case there was a specific statute, which is a legitimate statute cited, but just because you cite a legitimate statute doesn't mean that you have a factual basis for citing that. And in this case, again, the bad faith acts were the complete disregard of all of the evidence to the contrary. Also with- Ms. Shepherd, if a counselor officer based his or her assessment solely on credibility and said, I find the applicant not credible, would you say that that's a sufficient basis? Well, it would depend on the circumstance, Your Honor. In this case- Well, we have that in immigration cases. Immigration judges regularly present us with a conclusion along those lines. Yes, Your Honor, and under the Real ID Act, I believe you're referring to where there is no other evidence, credibility alone can be a reason to positively determine. It can also be a reason to negatively determine in the applicant's favor. In this case, we don't know exactly what they found inconsistent about the applicant's testimony, but we do know that there was documentary evidence submitted that she was the parent of the two children who were deceased. And back to the question about how the waiver works, if the counselor officer believed that they were her children, then there's no smuggling. She was applying for a visa, as she should. That exception would really only come into play usually in a border crossing situation where a mother is bringing her children illegally over the border. When you're applying at the embassy, when they say that it's the 212A6E smuggling basis, they are essentially saying that they don't think that those were your children. And to ignore all of the evidence to the contrary is in bad faith, and it doesn't provide the facially legitimate bona fide reasoning that is required. Thank you. All right. Thank you. Ms. Goldsmith, thank you. The case is taken under advisement.